Robin D. Gochenour

v.

J. Michael Beasley,
Jane L. Beasley, and
Beasley Realty, Inc.,
d/b/a Era Beasley Realty

October 19, 1998

Case No. (Law) CL98-6

BY JUDGE JOHN J. MCGRATH, JR.

This case comes before the Court on a number of motions recently filed by the Defendants. The Court has previously ruled in open Court on the Motions In Limine that were filed and has reserved formal ruling on the Motion for Summary Judgment on Count I (wrongful termination —*Bowman* claim); Motion for Summary Judgment on Count II (action based on Virginia

Human Rights Act, § 2.1-714, *et seq.* of the Code of Virginia); and the Defendants' Motion to Sever or Dismiss the Plaintiff's Spoliation Claim.

## I. *Alleged Facts*

The Motion for Judgment alleges that the Plaintiff had been a faithful employee of the defendant corporation, which was operated by its president and chief stockholder, J. Michael Beasley, for a period of thirteen years. On August 21, 1997, the Plaintiff, who was a secretary at the defendants' real estate office, had her young son drop by the office before going to lunch. While her son was playing under the Plaintiff's desk, he brought the Plaintiff's attention to the existence of a small camera secreted in the wall and which was pointing directly to the area in which she sat while doing typing and would be able to photograph her crotch area while she was working at the typing desk. The Plaintiff went into the defendant's private office, which was empty at the time, and apparently found that the camera which was pointing under her typing desk was connected to and displayed a picture on the computer located in the defendant's office.

The Plaintiff, outraged by this discovery, immediately resigned from her employment and contacted the police concerning possible criminal prosecution. The Plaintiff further alleges that this discovery caused her to reflect back over the previous year of her employment when the Defendant, J. Michael Beasley, allegedly made various statements to the Plaintiff concerning the nature, style, or color of her undergarments.

It is the allegation of the Plaintiff that the Defendant had secreted a video camera in a wall receptacle directly and pointing at the area of her crotch while she was typing. It is the Plaintiff's further allegation that the photographs of her pubic areas were collected by the defendant Beasley and used for his own prurient gratification and transmitted over the internet to others so inclined.

The Amended Motion for Judgment, which is currently before the Court, alleges four causes of action against the defendants, which are as follows:

Count I charges wrongful termination of employment pursuant to the doctrine set forth in *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985);

Count II charges a violation of the Virginia Human Rights Act (§ 2.1-714 *et seq.*) alleging that the defendant corporation employed more than five but less than fifteen individuals;

Count III alleges a violation of Virginia Code § 8.01-40 which prohibits the use of a person's name, portrait, or picture for the purpose of trade without having obtained the written consent of such person;

Count IV charges a spoliation of evidence, alleging that there was an agreement for the preservation of evidence which was breached by the defendant and the defendant's officers.

The Plaintiff prays for compensatory damages of $500,000.00, punitive damages of $350,000.00, appropriate front and back pay, and reasonable attorney's fees.

## II. *Legal Discussion*

### A. *Count I: Wrongful Termination Claim*

The Defendant has moved for summary judgment on this claim asserting that there are no disputed issues of fact. In fact, the Defendant's real claim is that the Plaintiff has failed to state a cause of action cognizable under the law of Virginia. Initially, Plaintiff opposes this motion on the grounds that the motion that has been brought is in the nature of a demurrer and the case is not appropriate for summary judgment. The plaintiff relies upon a well established line of cases holding that a demurrer is the proper method by which to test the legal sufficiency of the pleading and any motion for summary judgment is only to be used on those matters that cannot be reached by a demurrer. See, *e.g.*, *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394 (1991); *Goode v. Courtney*, 200 Va. 804 (1959). Though there is substantial merit to the Plaintiff's position, the Court is of the view that it is in the interest of judicial efficiency to consider the Defendants' Motion for Summary Judgment on Count I to be the functional equivalent of a demurrer to the Count challenging the legal sufficiency of the claim.

The pleadings are clear that when the Plaintiff discovered the existence of the camera located under her desk and pointing at crotch level to her typing chair, she became outraged, reported the matter to the police, and immediately resigned from employment. Therefore, the initial question that must be addressed is whether, under the law of the Commonwealth, an employee who resigns from employment can bring a *Bowman* type claim using the theory that has become commonly known as a constructive discharge. Constructive discharge has a long but somewhat tortured history in the federal courts when applying Title VII and other types of employment related federal statutes, but has not been the subject of any Virginia appellate case.

It is well established in federal jurisprudence, that an employee who resigns from a position can bring a substantive claim based upon a constructive discharge. See *e.g.*, *Poss v. Charles E. Smith Realty Co.*, No. 96-1931 (4th Cir. June 19, 1998); *Gill v. Systems Planning Corp.*, No. 96-2172 (4th Cir. August

25, 1997); *Rose v. United Services Auto. Assn.*, Civil Action No. 2:97cv1002 (E.D. Va. June 25, 1998). The law of constructive discharge within federal jurisprudence was succinctly set forth by the court in *Rose v. United Services Auto. Assn., supra,* when it stated:

> Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job ... . To establish a constructive discharge claim against an employer, an employee must prove two elements: deliberateness of the employer's actions and intolerability of the working conditions ... . A deliberateness exists only if the actions complained of are intended by the employer as an effort to force the employee to quit ... . Intolerability of working conditions ... . is assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign ... . An employee is protected from a calculated effort to pressure him to resignation through the imposition of unreasonably harsh conditions in excess of those faced by co-workers. He is not, however, guaranteed a working environment free of stress. [Internal quotation marks and case citations deleted.]

As previously stated, the appellate courts in Virginia do not seem to have previously addressed this issue directly. It is interesting to note that in the case of *Wright v. Donnelley & Co.*, 28 Va. Cir. 185 (Loudoun County 1992), the trial judge sustained the demurrer to the wrongful termination count because the employee had resigned and the trial court had determined that Virginia would not recognize a constructive discharge claim. However, the case was heard by the Supreme Court and was joined with *Lockhart v. Commonwealth Education Systems Corp.*, 247 Va. 98 (1994), for decision; the Supreme Court in the majority opinion reinstated the plaintiff Wright's cause of action. In the majority's opinion, however, no reference was made to her allegation of constructive discharge; instead the Court appeared to characterize her situation as having been fired. The Court stated "Mrs. Wright reported to work and Mr. Donnelley made repeated abusive, inappropriate and harassing remarks to her. Ultimately, he ordered her to get out!"

The circuit courts have pretty much evenly split on the question of whether a constructive discharge claim can be used in a wrongful termination case in the Commonwealth of Virginia. In *Jones v. Professional Hospitality Resources, Inc.*, 35 Va. Cir. 458 (Va. Beach 1995), the trial judge held that constructive discharge was not a viable doctrine in a wrongful termination case. In *Dearing v. Thor, Inc.*, (City of Roanoke June 18, 1998), *Lundy v. Cole*

*Vision Corp.*, 39 Va. Cir. 254 (City of Richmond 1996), and *Dowdy v. Jeff Bower*, 37 Va. Cir. 432 (City of Roanoke 1995), the circuit courts held that at the demurrer stage it could not be said that constructive discharge was not a viable cause of action in the Commonwealth of Virginia.

After having briefly reviewed the federal authority and having reviewed the Circuit Court opinions, this Court is of the opinion that constructive discharge is a viable doctrine in the Commonwealth of Virginia in a wrongful discharge case. The Court is persuaded by the analysis set forth by Judge Pattisall in the *Dowdy v. Bower* case, *supra*:

> It has long been recognized in the law of the Commonwealth in domestic matters that a dutiful, loyal, caring spouse is not required to remain in a hostile, demeaning, oppressive environment created by an abusive, harassive, cruel spouse under intolerable and inexcusable conditions. The spouse who is forced to leave the marital domicile cannot, under these circumstances, be held to have deserted the marital domicile and the spouse who remains in said domicile. Our law recognizes the doctrine of constructive desertion on the part of the spouse whose outrageous and unacceptable conduct forced the other spouse to leave and provides the aggrieved spouse a remedy against the spouse who perpetrated the wrongful act.
>
> Must then a faithful, dutiful, competent, and loyal employee suffer embarrassment, humiliation, indignation and harassment from an employer until the employer no longer receives any measure of gratification from the sexual harassment of the employee and thus discharges the employee before the employee has a cause of action for wrongful discharge?
>
> The Court thinks not.
>
> If Plaintiff can prove what she has alleged, it is the clear and unequivocal public policy of this Commonwealth that no person should have to suffer such indignities nor be subjected to such rude and reprehensible conduct in the employment place.

*Id.*

This Court, therefore, holds that an employee who can meet the high burden of proving a constructive discharge does have standing to pursue a *Bowman* wrongful discharge claim. Therefore, the Court now turns to the question of whether in the instant case the plaintiff has stated a substantively viable *Bowman* wrongful termination claim.

Plaintiff, well aware of the strictures placed upon *Bowman* type claims in the Commonwealth, has narrowly crafted her claim to allege that the Plaintiff was constructively terminated from her employment at the Defendant's business and that this constructive termination violated the public policy of Virginia as articulated in:

(1) Article I, § 1, of the Constitution of the Commonwealth of Virginia (the enjoyment of life, liberty, and the means of acquiring or possessing property and pursuing and obtaining happiness and safety);

(2) § 19.2-59 of the Code of Virginia (prohibition of searches without warrant);

(3) § 8.01-40 of the Code of Virginia (unauthorized use of photograph in trade); and

(4) § 18.2-386.1 (unlawful filming, videotaping, photographing of another's private parts).

The plaintiff argues from these three statutory and one Constitutional provision that there is a clearly articulated public policy in the Commonwealth of Virginia prohibiting an individual from being subjected to voyeurism in the workplace which rises to the level of depravity alleged in this case. Two of the above four alleged basis for the *Bowman* claim do not present great difficulty in analysis.

First, this Court has previously held (see *Shifflett v. Lewis*, Rockingham County, At Law No. 11254 (August 12, 1998) that "it is not possible .... to base a wrongful termination claim, with nothing more, on the Bill of Rights of the Virginia Constitution." *Id.* at 10. The reason is that the Constitution acts as a restraint on governmental actions, not on *private* actions. *E.g., Town of Madison v. Ford*, 255 Va. 429 (1998) ("the Virginia Constitution .... establish[es] the limits of governmental action"); *Dean v. Paolicelli*, 194 Va. 219 (1952) (The office and purpose of the Constitution is to shape and fix the limits of governmental activity.).

Defendant also quite properly notes that permitting a *Bowman* wrongful termination claim to be premised upon the general principles of our democratic society articulated in the Virginia Bill of Rights would be to make every employment termination case actionable. There would be few terminations of employment that a skillful lawyer could not with some degree of candor characterize as violating the terminated employee's right to life, liberty, and pursuit of happiness by taking away his or her means of earning a living. The sweeping breadth of such a claim is clear evidence that it cannot stand as the premise for a *Bowman* type claim.

Similarly, Plaintiff's reliance upon the prohibition on warrantless searches contained in § 19.2-59 of the Code of Virginia cannot stand as an articulated public policy that can support a *Bowman* claim. The Supreme Court recently held in *Buonocore v. C. & P. Tel. Co.*, 254 Va. 469 (1997), that § 19.2-59 does not apply to private individuals or businesses but only applies to circumscribe the activities of "individuals who by virtue of their governmental employment can be found guilty of malfeasance in office." *Id.* at 473. In short, the prohibitions contained in this portion of the Code apply only to law enforcement officers and other governmental agents who can actually be found guilty of malfeasance in office. Given that there is no averment that the defendants were in any way carrying out a governmental or quasi-governmental function, this statutory prohibition cannot serve as the premise of a *Bowman* claim in this case.

Thus, the remaining two bases for the plaintiff's *Bowman* claim are the assertion that § 18.2-361 of the Criminal Code and § 8.01-40 of the Civil Code provide the underpinnings for the articulated public policy which was allegedly involved in this case.

Taking up first the issue of the Civil Code § 8.01-40 of the Code of Virginia, as amended, it must be noted that this is a statute which prohibits a picture of an individual being used without the written consent of the person for "advertising purposes or for the purposes of trade." The statute itself provides that an aggrieved party may bring suit and recover compensatory damages and that the jury may in its discretion also award exemplary damages. This statute is self-contained. It prohibits certain activity and provides explicit remedies for a violation of those rights. The Plaintiff has exercised her rights under the Statute by bringing as Count III of this Motion for Judgment an action premised upon a violation of this statute. It has been long held that a civil statute which prohibits certain activity and provides specific remedies for an aggrieved party is self-contained and it is not the intent of the Legislature that it would also serve as an "articulated public policy of the Commonwealth of Virginia," that could also serve as the basis of a *Bowman* type claim. *E.g., Judy v. National Fruit Co.*, 40 Va. Cir. 244 (City of Winchester 1996); *Pruitt v. Johnston Mem. Hosp., Inc.*, 21 Va. Cir. 188 (Washington County 1990); *see also, Vansant & Gusler, Inc. v. Washington*, 245 Va. 356 (1993). Therefore, this Court is of the view that § 8.01-40 is not an adequate basis for the wrongful termination Count in this lawsuit.

This leaves the far more substantive and difficult question of whether the criminal statutes of the Commonwealth of Virginia articulate "a public policy of the Commonwealth of Virginia" which is a sufficient basis for a *Bowman* claim.

Thus, the only remaining issue as regards Count I is whether the Plaintiff can state a *Bowman* wrongful termination claim by asserting that she was the victim of the crime set forth in § 18.2-386.1 and that the perpetrator of the crime was her employer. Or stated another way, is the criminal prohibition on filming, videotaping, and photographing persons' genitalia and other private parts without their permission and under circumstances in which they would have an expectation of privacy a statutorily articulated public policy of the Commonwealth of Virginia on which to support a wrongful termination claim.

In determining whether the criminal statutes of the Commonwealth of Virginia sufficiently articulate a public policy which rises to the level of a clearly articulated public policy within the meaning of *Bowman,* it is necessary to briefly examine the facts in the seminal case of *Bowman v. State Bank of Keysville,* 229 Va. 534 (1985). In *Bowman,* two bank employees who owned stock in their employer corporation were terminated from their at will employment when they complained to the bank of the coercion that had been applied to them to vote their stock in favor of a merger to which they were personally opposed. The Supreme Court acknowledged the continued validity of the employment at will doctrine in reaching its decision but agreed with the judicial holdings of approximately twenty other states, which have permitted a tort action for wrongful discharge of an at will employee when the employee was "discharged in violation of an established public policy." *Id.* at 539. The Court in *Bowman* held:

> [I]n the present cases, the retaliatory discharges were based on violations of public policy by the defendants. Va. Code § 13.1-32 conferred on these plaintiffs as stockholders the right to one vote for each outstanding share of stock held, on each corporate matter submitted to a vote at a meeting of stockholders. This statutory provision contemplates that the right to vote shall be exercised free of duress and intimidation imposed on individual stockholders by corporate management. In order for the goal of the statute to be realized and the public policy fulfilled, the shareholder must be able to exercise this right without fear of reprisal from corporate management which happens also to be the employer. Because the right conferred by statute is in furtherance of established public policy, the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation.

Consequently, applying a narrow exception to the employment at-will rule, we hold that the plaintiffs have stated a cause of action in tort against the Bank and the named directors for improper discharge from employment.

*Id.* at 540.

It should be noted that the statute which was the basis for the Supreme Court's decision in *Bowman* does not explicitly state that shareholder votes must be "free of duress and intimidation" and it certainly contains no explicit prohibition of one group of shareholders placing pressure or economically coercing other shareholders to achieve a desired corporate outcome. Rather, according to the Supreme Court, the statute "contemplates this idea of volitional voting" and this idea embedded within the statute can and did serve as the clearly articulated public policy of Virginia upon which a wrongful termination claim could be based.

Since the decision in *Bowman,* the courts have narrowed considerably this exception to employment at-will. In *Miller v. SEVAMP, Inc.,* 234 Va. 462 (1987), the court refused to find a public policy enforcing provisions of an employer's policy manual. *Id.* at 468. In *Lawrence Chrysler Plymouth Corp. v. Brooks,* 251 Va. 94 (1996), the court found that the Code sections upon which the plaintiff based his claim did not articulate a public policy, nor did the plaintiff specify a particular statute violated by the employer. *Id.* at 98. The court distinguished the *Bowman* decision, noting that in *Bowman,* the plaintiff had identified specific statutes in which the General Assembly had established public policies." *Id.* After modifications to the Virginia Human Rights Act, it can no longer be considered to contain articulated public policy which can serve as the basis of a Bowman claim. *Doss v. Jamco, Inc.,* 254 Va. 362 (1997).

In spite of the ample precedent on the application of the *Bowman* doctrine, there appears to be little precedent in the Commonwealth addressing the question of whether a criminal statute is a "clearly articulated public policy" upon which a wrongful termination claim can be premised. The courts of other jurisdictions who have doctrines similar to *Bowman* have from time to time addressed this question. Although the non-Virginia precedent is not unanimous, it appears that the weight of the authority is that a state's criminal code clearly articulates a public policy the violation of which can serve as an exception to the at-will doctrine. See, *e.g., Wagenseller v. Scottsdale Mem. Hosp.,* 710 P.2d 1025 (Ariz. 1985); *Nagy v. Wittlesey Automotive Group,* 47 Cal. Rptr. 2d 395 (Cal. App. 1995); *Fox v. MCI Communications Corp.,* 931 P.2d 857 (Utah 1997); *Skierkowski v. Creative Graphics Services, Inc.,* 195

W.L. 283945 (Conn. Super. May 5, 1995); *Anders v. Specialty Chemical Resources, Inc.*, 1997 W.L. 284809-7 (Ohio App. June 9, 1997); *Hodges v. Gibson Products Co.*, 811 P.2d 151 (Utah 1991).

The Supreme Court of Arizona sitting *en banc* decided in 1985 to adopt an exception to the employment at-will doctrine similar to the *Bowman* doctrine in the Commonwealth of Virginia and similar doctrines adopted in a large number of the states. The case in which they decided to abandon the unfettered employment at-will doctrine was *Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 710 P.2d 1025 (1985), which involved a rather bizarre set of facts involving an employee who refused to engage in "mooning" as part of the company's annual talent contests.

In the *Wagenseller* case, the Supreme Court of Arizona in a particularly well researched and well reasoned opinion analyzed the history of the employment at-will doctrine as it originated in the English common law and as it has been gradually modified by decisional authority in the United States. As part of their decision, it was argued that "mooning" may violate certain portions of the Arizona criminal code involving indecent exposure and similarly criminal statutes. On this issue the analysis of the Arizona Supreme Court is helpful:

> However, some legal principles, whether statutory or decisional, have a discernible, comprehensive public purpose. A state's criminal code provides clear examples of such statutes. Thus, courts in other jurisdictions have consistently recognized a cause of action for a discharge in violation of a criminal statute. In a seminal case involving the public policy exception, *Petermann v. International Brotherhood of Teamsters Local 396*, 174 Cal. App. 2d 184, 344 P.2d 25 (1959), the California Court of Appeals upheld an employee's right to refuse to commit perjury, stating:
>
> "The public policy of this state as reflected in the Penal Code ... would be seriously impaired if it were to be held that one could be discharged by reason of his refusal to commit perjury. To hold that one's continued employment could be made contingent upon his commission of a felonious act at the instance of his employer would be to encourage criminal conduct upon the part of both the employee and employer and would serve to contaminate the honest administration of public affairs. This is patently contrary to the public welfare." *Id.* at 169, 344 P.2d at 27.
>
> Although we do not limit our recognition of the public policy exception to cases involving a violation of a criminal statute, we do

believe that our duty will seldom be clearer than when such a violation is involved. We agree with the Illinois Supreme Court that "[t]here is no public policy more basic, nothing more implicit in the concept of ordered liberty, than the enforcement of a State's criminal code." *Palmateer v. International Harvester Co.*, 85 Ill. 2d at 132, 52 Ill. Dec. at 16, 421 N.E.2d at 879 (citations omitted).

*Id.* at 379-80.

There have been some decisions in Virginia which appear to hold that the criminal code cannot serve as the basis of a *Bowman* claim. *E.g., Oakley v. May Department Stores Co.*, 1998 W.L. 661367*2 (E.D. Va. September 25, 1998) (rejecting use of § 18.2-57, the criminal prohibition against assault and battery, as public policy for a *Bowman* claim); *Humphrey v. Columbia/HCA John Randolph, Inc.*, 46 Va. Cir. 109 (Chesterfield County, June 26, 1998) (rejecting use of Virginia Code Section 54.1-3400 *et seq.*, the criminal prohibition for misbranding a drug, as public policy basis for a *Bowman* claim).

However, after having reviewed all the available authority, this Court is persuaded by the rationale set forth in *Wagenseller* and similarly decided cases. Therefore, this Court is of the view that certain of the penal statutes of the Commonwealth of Virginia articulate a public policy that may be a sufficient basis for a *Bowman* wrongful termination claim.

In the instant case the public policy that is implicated is patently clear. Section 18.2-386.1 of the Code of Virginia is clearly a statute designed to protect people's privacy and to prohibit the surreptitious filming, photographing, or videotaping of a person's private parts without their permission. This protection is afforded to all of the citizens of the Commonwealth, and it is hard to conceive of a public policy more embedded in basic concepts of common decency and civility. It would seem axiomatic that if the public policy that was implied from the corporate code concerning the unfettered right of shareholders to vote on corporate mergers was a sufficient basis for a *Bowman* claim that the public policy articulated in this portion of the criminal code protecting citizens from temporarily or permanently recorded voyeuristic activity is an equally strong, if not far stronger, public policy upon which to base a wrongful termination claim.

However, the analysis cannot end at this point. One thing that is obvious in most of the cases decided in other jurisdictions is that the employees in question were terminated because they refused upon the insistence of their employer to themselves engage in criminal activity. That, of course, is not what is alleged here. The Plaintiff in this action was never requested to engage in

any illegal activity by her employer. However, it is similarly clear that accepting the averments in the Motion for Judgment as true as must be done at the demurrer stage, she was clearly the victim of a crime committed within the Commonwealth and she was subjected to precisely the type of invasion of her personal privacy and decency that the criminal statute was designed to protect.

Although a theoretical argument can be made between the status of an employee as unwilling perpetrator of a crime versus being a victim of a crime, I do not think that that is a relevant or meaningful distinction in this case. What is important is that the criminal statute articulates a public policy, a critical portion of which is the protection of citizens from voyeuristic activity, and in this case the Plaintiff has allegedly been damaged by violations of exactly that public policy while in her workplace. See, e.g., *Richmond Newspapers, Inc. v. Hazelwood,* 249 Va. 369 (1995). Therefore, the Court does not believe that the Plaintiff need be an unwitting perpetrator of a crime to fit within this exception to the employment at will doctrine but that as a victim of this particular type of crime may bring a *Bowman* claim.

Lastly, although it has not been raised by the parties, the Court has been concerned with the applicability to this case of § 8.01-221 of the Code of Virginia, as amended, and the decisional authority that has interpreted it. At first blush, it would appear that this statute would lend some support to the Plaintiff in that it appears to provide a cause of action for a person who has been injured by violation of a statute (including a criminal statute). However, the decisions interpreting this statute have made it clear that the statute does not *create* any private right of action but merely preserves pre-existing causes of action even if the activity simultaneously violates the criminal statute. As the Court stated in *Vansant & Gusler, Inc. v. Washington,* 245 Va. 356 (1993):

> Accordingly, we reiterate that Section 8.01-221 creates no new right of action for damages for violation of some other criminal or penal statute; no civil right of action exists unless such other statute by its terms so provides or unless proof of the same facts that establish violation of such other statute also constitutes proof of an otherwise existing civil action for damages independent of the criminal statute.

*Id.* at 361.

In the instant case, the right of action being pursued by the Plaintiff is a common law action for wrongful termination, and such a remedy is not provided by the criminal statute. However, as has previously been discussed, the jurisprudence developed after *Bowman v. State Bank of Keysville,* 229 Va.

534 (1985), teaches that the statute which articulates the public policy does not need to provide a civil remedy for a violation of that public policy. It need only articulate a public policy sufficiently precise to be the basis for a tort action.

Therefore, this Court does not believe that premising a *Bowman* claim on a violation of the Virginia Criminal Code in any way violates the principles that have been well established in applying Section 8.01-221 of the Civil Code.

For the reasons set forth above, Defendant's Motion for Summary Judgment which the Court has treated as in effect a demurrer to Count I of the Motion for Judgment is overruled.

## B. *Count II: Violation of the Virginia Human Rights Act*

Count II of the Motion for Judgment alleges a violation of the Virginia Human Rights Act, § 2.1-714 *et seq.* of the Code of Virginia. Defendant has moved for summary judgment on this Count and in support thereof has attached an affidavit of Mr. Beasley stating that at all pertinent times his corporation did not have more than five "employees" working for it. He goes on further in the affidavit to elaborate that all of the real estate agents who worked for him did so as independent contractors pursuant to a written agreement which was attached to his affidavit. Defendant contends that there is no genuinely disputed material issue of fact in light of the affidavit because the Act only applies to an "employer employing more than five but less than fifteen persons."

Plaintiff's response is that, under Rule 3:18 of the Rules of the Supreme Court of Virginia, a trial court may not grant summary judgment based solely on the basis of *ex parte* affidavits which purport to show that there is no material fact in issue. A close reading of Rule 3:18 supports the Plaintiff's view in this matter in that affidavits are not one of the documents enumerated in the rule on which summary judgment may be granted. This also appears to be the uniform position of the courts that have considered this issue. *E.g.,* *Farmers & Merchants National Bank of Hamilton v. Williams,* 30 Va. Cir. 167 (Loudoun County 1993); *Goode v. Goode,* 29 Va. Cir. 409 (City of Fredericksburg 1992); *Skeen v. Indian Acres Club of Thornburg, Inc.,* 27 Va. Cir. 167 (Spotsylvania County 1992); *Daclouche v. H.B.L., Inc.,* 25 Va. Cir. 243 (Fairfax County 1991); *Hennage Creative Printers, Inc. v. Dept. of Taxation,* 9 Va. Cir. 104 (City of Alexandria 1987).

Accordingly, the Defendant's Motion for Summary Judgment on Count II of the Motion for Judgment is hereby denied.

## C. *Motion to Sever or Dismiss Spoliation Claim*

The Court, by a previous ruling, has denied the Defendant's demurrer to Count IV of the Motion for Judgment which states a claim for spoliation based upon an alleged agreement that existed between Plaintiff's counsel and previous defense counsel to preserve certain evidence. Defendants now move to dismiss the claim as being prematurely brought because the Plaintiff has not suffered any damages even if it is assumed that there has been a spoliation of evidence in violation of an agreement. Secondly, Defendants contend that if this Count is not dismissed, it should be severed and tried in a separate proceeding. Defendants base their argument for severance on the grounds that trying the spoliation claim in the case in chief would unduly prejudice their case and confuse the jury.

Plaintiff's oppose the Motion to Dismiss the Spoliation Claim on the grounds that the Court has previously denied the demurrer on the same matter. Secondly, Plaintiff's oppose the severance on the grounds that the well established laws that actions of a party to secrete, destroy, or otherwise alter evidence is admissible in the case in chief to demonstrate a guilty conscience. See *e.g.*, *Blue Diamond Coal Co. v. Aistrop*, 183 Va. 23 (1944); *Neece v. Neece*, 104 Va. 343 (1911). Therefore, Plaintiff argues that severing the spoliation claim would not alter the evidence to come in in the case and therefore would be an unnecessary expenditure of judicial resources.

The Court believes, in light of the cases cited above, that there would be no material shortening of the trial to sever the spoliation claim. The Court is of the view that the spoliation claim can be tried with the case in chief. Therefore, Defendant's Motion to Dismiss or Sever Count IV of the Motion for Judgment is hereby denied.

The Clerk is directed to send an attested copy of this Opinion and Order to Mark D. Obenshain, Esquire, counsel for Plaintiff, and to R. Craig Wood, Esquire, counsel for Defendants.