# CIRCUIT COURT OF FAIRFAX COUNTY

The Turrisi Companies, L.L.C.

v.

Cole Holdings Corp. et al.

January 31, 2013

Case No. CL 2012-971

By Judge Jonathan C. Thacher

This matter came before the Court on January 3, 2013, upon Defendants Cole Holdings Corporation and Cole MT Winchester VA, L.L.C.'s Motion for Summary Judgment. After considering the pleadings and briefs filed by counsel, and oral argument, the Court took the matter under advisement. For reasons set forth below, Defendants' Motion for Summary Judgment is denied.

## *Background*

This dispute arises from a brokerage relationship between Plaintiff, The Turrisi Companies, L.L.C. ("Turrisi"), and Defendants Cole Holdings Corporation and Cole MT Winchester VA, L.L.C. (collectively "Cole").

The Amended Complaint alleges that, in December 2010, John Beal, the authorized representative of Turrisi, entered into an agreement with Tom Falatko, the Vice President of Acquisitions for Cole, in which Turrisi would serve as the buyer's broker for the purchase of the Winchester Station shopping center ("the Property"). At this time, the Property was not listed for sale to the public. On December 10, 2010, Beal sent Falatko a Confidentiality Agreement, which Falatko executed on behalf of Cole Real Estate. The Confidentiality Agreement stated that it would remain in effect for one year. On the same date, the parties exchanged emails addressing the commission amount. Upon Falatko's fee recommendation, Beal responded that "[a] 1.5% commission in Winchester Station with a cap not to exceed

$500k is fine. Attached is a commission agreement. Please review, sign, and send back. . . ." The Commission Agreement sent by Beal was never signed by Cole.

Beginning on December 10, 2010, and continuing until early March 2011, Turrisi sent Cole information regarding details of the Property, including the site plan, photographs, traffic and demographic information, financial details, and other proprietary information. On March 3, 2011, Cole made an offer to purchase the Property; however, the offer was rejected. Falatko informed Beal that the seller was going to list the property for sale with a broker. The Complaint further alleges that Falatko assured Beal in a phone conversation on March 18, 2011, that Turrisi was protected and that Cole would honor the Commission Agreement if Cole became the future buyer.

Beginning in June 2011, Cole entered into additional negotiations with the owners to purchase the Property. On July 19, the owners and Cole entered into a letter agreement for Cole to purchase the Property. On September 30, 2011, Cole and the sellers entered a formal purchase agreement. On October 2, 2011, Cole created Cole MT Winchester, L.L.C., to take title to the Property.

Turrisi's Amended Complaint sets forth claims for breach of contract and unjust enrichment and seeks a commission in the amount of $369,000.

In the instant motion, Defendants seek summary judgment on two bases. First, Cole asserts that any brokerage relationship between Turrisi and Cole terminated in March 2011. Cole argues that the Commission Agreement on which Turrisi seeks to recover damages for breach does not specify a termination date. Thus, pursuant to Va. Code § 54.1-2137(B), it terminated ninety days after the date of the agreement on or about March 10, 2011. Therefore, Turrisi had no right to a commission because the agreement terminated several months before Cole and the owners entered into the Letter of Intent on July 19, 2011. Cole also contends that the one-year term of the Confidentiality Agreement has no bearing on the duration of the brokerage relationship.

Secondly, Cole also argues that Turrisi was not entitled to a commission because it was not the procuring cause of the sale. Cole argues that there was a material break in the continuity of negotiations between Cole and the seller from March 18, 2011, when Turrisi ceased providing broker services to Cole, and May 18, 2011, when the property was formally listed for sale with a broker, and that additional intervening negotiations took place between May 26, 2011, and September 30, 2011, that did not involve Turrisi.

Turrisi responds to Cole's motion with several arguments. First, Turrisi argues that the facts set forth in Cole's motion are disputed and that several of the documents attached to Cole's motion should not be considered on

summary judgment because they are not contained in the pleadings and are not admitted.

Turrisi also asserts that his right to a commission is not barred by Va. Code § 54.1-2137(B)'s provision on brokerage agreements because the Commission Agreement, which lacked a fixed expiration date, was only part of the overall brokerage agreement. Turrisi argues that the Confidentiality Agreement, Commission Agreement, and related emails should be read together to meet the parties' mutual intent. Turrisi rejects Cole's contention that the parties' brokerage agreement is ineffective because the termination date is not specifically set forth in a particular document.

Additionally, Turrisi points out that the version of Va. Code § 54.1-2137 relied on by Cole was not in effect at the time the transactions took place. The version of the statute that was in effect at the time of the transactions focused on the overall "brokerage relationship," as opposed to a written "brokerage agreement," and did not require that any agreement defining the duration of a brokerage relationship be in writing.

Finally, Turrisi asserts that the issue of procuring cause is a question of fact to be decided at trial.

### Analysis

### I. Standard of Review

"Summary judgment shall not be entered if any material fact is genuinely in dispute." Va. Sup. Ct. R. 3:20. Summary judgment is intended to allow courts to "bring litigation to an end at an early stage, when it clearly appears that one of the parties is entitled to judgment within the framework of the case." *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 5, 82 S.E.2d 588, 590 (1954). Nevertheless, the Supreme Court of Virginia has indicated repeatedly that summary judgment is considered a drastic remedy and is strongly disfavored. *Smith v. Smith*, 254 Va. 99, 103, 487 S.E.2d 212, 215 (1997). It is not a substitute for trial where an issue of fact actually exists. See *Klaiber v. Freemason Assocs., Inc.*, 266 Va. 478, 484, 587 S.E.2d 555, 558 (2003). Accordingly, a trial court considering a motion for summary judgment must "accept[] as true those inferences from the facts that are most favorable to the non-moving party, unless the inferences are forced, strained, or contrary to reason." *Id.* (quoting *Dudas v. Glenwood Golf Club, Inc.*, 261 Va. 133, 136, 540 S.E.2d 129, 130-31 (2001)).

## II. *Defendants' Motion for Summary Judgment*

### A. *Scope of Summary Judgment*

Virginia Supreme Court Rule 3:20 identifies what may be considered by a court on a summary judgment motion. Specifically, "If it appears from the pleadings, the orders, if any, made at a pretrial conference, the admissions, if any, in the proceedings, or, upon sustaining a motion to strike the evidence, that the moving party is entitled to judgment, the court shall enter judgment in that party's favor." Va. Sup. Ct. R. 3:20. Use of discovery depositions is prohibited unless the parties agree otherwise. *Id.* Rule 3:20 does not include affidavits and, as a general rule, trial courts do not consider affidavits on such motions. See *Gochenour v. Beasley*, 47 Va. Cir. 218, 230 (Rockingham 1998); *Skeen v. Indian Acres Club of Thornburg, Inc.*, 27 Va. Cir. 167, 168 (Spotsylvania 1992) ("There is no provision in Virginia practice (unlike Federal practice) whereby the court can consider exhibits, including affidavits, attached to motions and memoranda, except by stipulation or unless they have been admitted pursuant to Rule 4:11 or produced pursuant to Rule 4:9."); *Daclouche v. H.B.L., Inc.*, 25 Va. Cir. 243, 246 (Fairfax 1991); see also W. Hamilton Bryson, *Virginia Civil Procedure*, § 6.07 (4th ed. 2005).

Therefore, the Court considers only those facts contained in the pleadings and admissions. To the extent that Defendants' Motion is based on other documents, they are not considered by the Court.

Defendants include the Affidavit of Thomas Falatko as well as several exhibits it their Motion for Summary Judgment. These are not contained in the pleadings and are not admitted; therefore, they are not considered on this motion.

### B. *Termination of Brokerage Relationship*

Virginia Code § 54.1-2137 addresses the commencement and termination of brokerage relationships. The current statute, relied on by Defendants, became effective July 1, 2012. Va. Code § 54.1-2137 note; 2011 Va. Acts, ch. 461. The previous version of the statute was in effect from 1995 until June 30, 2012. The events giving rise to this case occurred in 2010 and 2011, and this case was filed on January 20, 2012. Thus, the earlier version of the statute shall be applied.

In Virginia, there is a presumption against the retroactive effect of statutes absent a clear indication by the legislature. *Virginia Farm Bureau Ins. Co. v. Travelers Indem. Co.*, 242 Va. 203, 208, 408 S.E.2d 898, 901 (1991) (citing *Gloucester Realty Corp. v. Guthrie*, 182 Va. 869, 874-75, 30 S.E.2d 686, 688-89 (1944)). There is no evidence that the legislature intended Va. Code 54.1-2137 to have retroactive effect.

The statute in effect at the time of the transactions provides that "[b] rokerage relationships shall have a definite termination date; however, if a brokerage relationship does not specify a definite termination date, the brokerage relationship shall terminate ninety days after the date the brokerage relationship was entered into." Va. Code § 54.1-2137(B)(1) (2010). A "brokerage relationship" refers to "the contractual relationship between a client and a real estate licensee who has been engaged by such client for the purpose of procuring a seller, buyer, option, tenant, or landlord ready, able, and willing to sell, buy, option, exchange, or rent real estate on behalf of a client." *Id.* § 54.1-2130.

The parties apparently do not dispute that there was a brokerage relationship; however, there are disputed facts as to what comprised it. Defendants assert that, because the Commission Agreement did not state a termination date, the parties' agreement terminated on March 10, 2011, ninety days from the date of the agreement. Plaintiff contends that the Commission Agreement, Confidentiality Agreement, and emails pertaining to commission amounts should be read together to form the brokerage relationship. Specifically, Plaintiff contends that the Commission Agreement was merely a part of the parties' overall relationship and that the Confidentiality Agreement, which was also part of their brokerage relationship, contained a one-year expiration date.

There is ambiguity as to what constitutes the understanding of the parties. The Commission Agreement was not signed by either party and there are a series of emails addressing the issue of a commission amount. The Commission Agreement, Confidentiality Agreement, and emails were exchanged by the parties on the same date. Additionally, Turrisi states in Paragraph 13 of its Amended Complaint that, upon learning the seller was going to list the property, "Falatko assured Beal in a telephone conference that day that Turrisi was protected by the emails, the Letter of Intent, and the Confidentiality Agreement and that Cole would honor the commission agreement if [C]ole became the future buyer of the [Property]." Cole denies this allegation in its Answer. The pleadings may form the basis for a dispute of material fact. Va. Sup. Ct. R. 3:20. Thus, because the scope and content of the parties' brokerage relationship remains in dispute, it is not clear, as a matter of law, that the parties brokerage relationship terminated on or about March 10, 2011. Therefore, summary judgment is not appropriate on this basis.

## C. *Procuring Cause of the Sale*

"Whether a broker is the procuring cause of a sale of property listed with him is usually a question of fact." *Ford v. Gibson,* 191 Va. 96, 103, 59 S.E.2d 867, 870 (1950). "To be the procuring cause of a sale, the broker must have originated or caused a series of events which, without break in their continuity, result in the accomplishment of the prime object of his

employment, which is, usually, to procure a purchaser ready, willing, and able to buy on the owner's terms." *Id*.

Although this is generally a question of fact, the Supreme Court of Virginia determined the issue of procuring cause as a matter of law in *Shalimar Development, Inc. v. Federal Deposit Ins. Corp.*, 257 Va. 565, 515 S.E.2d 120 (1999). In *Shalimar*, a development company and a bank, which owned a condominium building, had a brokerage agreement that gave the development company a commission for each condominium unit sold. 257 Va. at 567. The development company negotiated with a buyer for the sale of all the remaining units, but the buyer rejected the asking price as too high. *Id*. at 568. The bank then terminated its brokerage contract with the development company. The bank subsequently failed and was placed in receivership. A new bank was chartered and placed in conservatorship. The condominium property was then conveyed to the new bank. Ultimately, the new bank reached an agreement with the buyer for sale of the units. The plaintiff development company filed suit seeking a commission on the sale. *Id*. The trial court had found that the plaintiff development company was not entitled to a commission in light of the break in the continuous series of events leading up to the sale and set aside the jury verdict for the plaintiff. *Id*. at 571. On appeal, the Court affirmed the decision, finding that the potential buyers were not "ready, willing, and able to buy" during the initial negotiations and that the transfer of the property to a newly chartered bank, which ultimately made the sale nearly six months after the first bank failed, indicated there was insufficient continuity between the development company's negotiations and the ultimate sale. *Id*.

Although some of the facts in *Shalimar* are analogous to those in the instant matter, there are important distinctions. In *Shalimar*, there was no question that the parties' brokerage agreement had been terminated prior to the sale. *Id*. at 568. Here, as articulated above, material questions surrounding the termination of the brokerage relationship remain for the trier of fact.

Additionally, he *Shalimar* Court relies on the failure of the first bank, which initially owned the property for sale, and the transfer of the property to a new bank, which ultimately made the sale, as a basis for finding a break in the continuous series of events leading to the sale. *Id*. at 571. Further, the Court noted that there was no evidence that the negotiations by the development company on behalf of the first bank facilitated the ultimate sale of the property. *Id*. In this case, however, there is not such a distinct severance of the parties' relationship. Turrisi did more than simply engage in negotiations with Cole. Rather, Turrisi provided Cole with confidential information about the Property from December 10, 2010, until March 2011. As previously stated, there was no express termination of their agreement, and, although Turrisi admits that it completed services for Cole in

March 2011, it nonetheless maintains that it had earned its right to a commission at that time.

As a general rule, the issue of the procuring cause of a sale is a question of fact. *Ford*, 191 Va. at 103. On summary judgment, all evidence must be viewed in favor of the non-moving party. *Klaiber*, 266 Va. at 484. Accordingly, with regard to whether Plaintiff was the procuring cause of the sale, disputed material facts remain that must be determined by a trier of fact.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied.