## Cascades North Venture Limited Partnership

### v.

## PRC Inc.

Record No. 941075

April 21, 1995

Present: All the Justices

*Thomas B. Newell (Charlie C.H. Lee; Marybeth Z. Gaul; Watt, Tieder & Hoffar*, on brief), for appellant.

*Paul Blankenstein (Larry L. Simms; Thomas G. Hungar; Terence P. Ross; William G. Broaddus; Gibson, Dunn & Crutcher; McGuire, Woods, Battle & Boothe*, on brief), for appellee.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal, we decide whether the trial court correctly ruled that the language of a lease and a lease amendment entitled the defendant lessee to summary judgment in an action seeking declaratory judgment and damages for breach of the lease.

Cascades North Venture Limited Partnership (Cascades North) leased an office building to Advanced Technology, Inc. (ATI), predecessor in interest to PRC Inc. (PRC). Cascades North and ATI first executed a lease in December 1980. By a document entitled "Amendment Number One to Lease," the parties effected changes to several terms of the original lease.

As amended, the lease provided that the "Lease Term" would extend seven years from the "Lease Commencement Date" of March 15, 1982. In addition, Section 31(A) of the amended lease provided that, upon certain specified conditions, "Tenant shall have the option to renew this Lease for one or two additional terms of five years each ('Renewal Terms') commencing upon the expiration of the original Lease Term or the first Renewal Term."

In both its amended and its original form, the lease provided for an initial sum as "Basic Rent" to be paid during the first year. Section 4 of the lease stated that the Basic Rent would be increased on each anniversary of the Lease Commencement Date by a percentage reflecting changes in the Consumer Price Index (CPI). Essentially, the Basic Rent was to increase each year by 30% of the increase in the CPI for the corresponding period. Section 5 of the lease further provided for payment of "Additional Rent" measured by increases in the landlord's taxes and operating expenses in connection with the property.

In the event the tenant exercised an option to renew the lease, Section 31 of the amended lease specified a slightly different manner of rent assessment. In the first year of the renewal, rent would equal either (1) the rent paid "for the last year of the original term or initial renewal term, as the case may be, of the Lease," or (2) an amount calculated with reference to the CPI, whichever was greater. Under the CPI formula, the rental figure would be the Basic Rent established in the first year of the lease, increased by an amount equal to 100% of the increase in the CPI from the Lease Commencement Date to the beginning of the renewal term. The rent thus established for the first year of the renewal would thereafter increase in accordance with the methods set forth in Sections 4 and 5.

Before March 14, 1989, on which date the seven years of the initial Lease Term would have elapsed, ATI notified Cascades North that it wished to renew the lease for an additional five-year term which would end March 14, 1994. However, when this five-year term neared its close, PRC, which now had succeeded ATI as tenant, declined to extend its tenancy beyond the five-year term ending March 14, 1994.

Despite PRC's decision not to enter a second five-year renewal period, Cascades North contended that PRC was obligated by the terms of the amended lease to guarantee the continued payment of rent for the premises until March 14, 1996, a date 14 years

from the Lease Commencement Date. PRC, on the other hand, maintained that its rent obligations ceased on March 14, 1994, at the end of the seven-year Lease Term plus the single five-year renewal that ATI had chosen to exercise.

The parties' disagreement centered on Section 29 of the lease, as amended, which was entitled "Leased Premises Vacation Schedule" and provided in material part:

Irrespective of the Lease Term referred to above or other conditions of this Lease, *Tenant agrees that it shall continue to be obligated for rent due (that is, all rent including Basic Rent and Additional Rent) on any space vacant during the Lease Term or Renewal Term* unless "satisfactory substitute tenant(s)" shall have been arranged.

. . . .

*During the time Tenant is obligated to pay rent (which shall include rent due under Section 31 below as if Tenant had exercised its Renewal Options), it shall observe all terms and conditions of this Lease.* The obligation of Tenant under this Section is, however, subject to the following:

. . . .

d. *In no event shall Tenant have any obligation to pay rent under this Section for any period which is beyond a date fourteen (14) years after the Lease Term Commencement Date.*

(Emphasis added.)

The above-quoted language of Section 29 had been added to the lease by "Amendment Number One." Before this amendment, Section 29 of the lease as originally executed had provided:

Irrespective of the Lease Term referred to above or other conditions of this Lease, *Tenant agrees that it shall continue to be obligated for rent due on any space vacant at the end of the Lease Term* unless satisfactory substitute tenancy shall have been arranged . . . . *During the time Tenant is obligated to pay rent beyond the Lease term, it shall observe all terms and conditions of this Lease as if the Lease term*

*were extended* with respect to all space in the Leased Premises for which satisfactory substitute tenancy has not been arranged.

(Emphasis added.)

Cascades North filed a motion for judgment, asking the trial court to declare that the lease obligated PRC to make the additional two years of rent payments, and seeking an award of damages for anticipatory breach of contract. The trial court then simultaneously heard PRC's demurrer and Cascades North's motion for summary judgment. Both parties argued that the lease provisions were unambiguous, although each party interpreted the language differently. The trial court denied Cascades North's motion for summary judgment and sustained PRC's demurrer, permitting Cascade North to amend its motion for judgment.

In its amended motion for judgment, Cascades North substantially altered its pleading to allege the circumstances under which the lease was entered into and the intention of the parties in drafting the provisions of the lease. Cascades North alleged that the principals of both parties to the lease had intended that the lease and amendment would obligate the tenant to guarantee rent for 14 years after the Lease Commencement Date. This long-term rent guarantee enabled Cascades North to obtain construction and permanent financing for the office building which was to be leased. In return, principal officers of ATI, the tenant, were to receive a one-third equity interest in the building. In support of these allegations, Cascades North attached affidavits from representatives of ATI and Cascades North who had negotiated and drafted the lease and its amendment, and from a representative of the lender who provided financing for the building.

PRC then moved the court to enter summary judgment in its favor. Cascades North opposed this motion, arguing that summary judgment was improper, both because the amended motion for judgment had placed questions of material fact at issue, and because PRC had not been able to explain the meaning of the disputed provisions in a way that removed all ambiguity.

The trial court granted PRC's motion for summary judgment, stating that the language of the lease was clear and unambiguous, and thus that Cascades North would not be allowed to present evidence to show what obligation the parties had intended to create. This appeal followed.

■ Our threshold inquiry is whether the language within the four corners of the lease is unambiguous. We make this determination without regard to the extrinsic facts concerning the parties' intent that were alleged by Cascades North in its amended motion for judgment. If the terms of the parties' agreement are contained in a clear and explicit writing, that writing is the sole memorial of the contract and the sole evidence of the agreement. In that event, the parol evidence pleaded by Cascades North could not be used to explain the written contractual terms. *See Amos v. Coffey*, 228 Va. 88, 91-92, 320 S.E.2d 335, 337 (1984).

■ Conversely, the rule excluding parol evidence has no application where the writing on its face is ambiguous, vague, or indefinite. In such a case, the proper construction of the contract is an issue for the trier of fact, and the court should receive extrinsic evidence to ascertain the intention of the parties and to establish the real contract between them. *Greater Richmond Civic Recreation, Inc. v. A.H. Ewing's Sons, Inc.*, 200 Va. 593, 596, 106 S.E.2d 595, 597 (1959); *Shockey v. Westcott*, 189 Va. 381, 389, 53 S.E.2d 17, 20 (1949).

Cascades North contends that the trial court erred in accepting PRC's interpretation of the lease and in holding that the lease provisions unambiguously released PRC from further obligations to pay rent after PRC chose not to exercise a second five-year renewal. Instead, Cascades North asserts that the lease provisions unambiguously point to the opposite conclusion, that PRC remains obligated under the lease until March 14, 1996. Alternatively, Cascades North argues that if the lease is susceptible to varying interpretations, the ambiguity thus presented must be resolved through a trial on the merits. *See Algernon Blair, Inc. v. Norfolk Redevelopment & Hous. Auth.*, 200 Va. 815, 818-19, 108 S.E.2d 259, 262-63 (1959).

"An ambiguity exists when language is of doubtful import, admits of being understood in more than one way, admits of two or more meanings, or refers to two or more things at the same time." *Allen v. Green*, 229 Va. 588, 592, 331 S.E.2d 472, 475 (1985); *see also Renner Plumbing, Heating & Air Conditioning, Inc. v. Renner*, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983); *Berry v. Klinger*, 225 Va. 201, 207, 300 S.E.2d 792, 796 (1983). Ambiguity is created by the "[d]oubtfulness [or] doubleness of meaning . . . of an expression used in a written instrument." *Berry*, 225 Va. at 207, 300 S.E.2d at 796.

To show that Section 29 of the amended lease imposes a 14-year rent obligation on PRC, and that the trial court erred in reaching a contrary conclusion on summary judgment, Cascades North tenders the following explanation. Cascades North notes that Section 29 of the original lease required the tenant to pay rent on vacated space "at the end of" and "beyond" the Lease Term, without explicit limitation as to the duration of this obligation. However, subsection 29(d), which was added to the amended lease, limited the obligation to 14 years. Although under the terms of subsection 29(d), the tenant would not be liable to pay for vacated space after 14 years had elapsed, amended Section 29 obligated the tenant to pay rent for such space at any earlier time "during the Lease Term or Renewal Term."

Cascades North argues further that the "Renewal Term" in question does not refer exclusively to a five-year term as to which the tenant has exercised its option to renew; instead, *both* such five-year renewal terms, even if not exercised, are time periods during which the tenant remains obligated to pay for vacated space. Cascades North contends that the inclusive nature of this reference to the "Renewal Term" can be inferred from the plural noun that is used later in amended Section 29, in providing for rent payments "as if Tenant had exercised its Renewal *Options*." Furthermore, Cascades North asserts that it is necessary to read amended Section 29 so as to obligate the tenant throughout both the five-year renewal periods, because, if the tenant's obligation could end at the conclusion of the seven-year Lease Term plus one five-year renewal, or a total of 12 years, then the 14-year provision of subsection 29(d) would be rendered meaningless.

On the other hand, PRC offers the following explanation to show that the lease clearly permits PRC to vacate the premises, without further obligation, at the expiration of the first renewal period. PRC notes that, by Amendment Number One, the parties deleted the phrases in Section 29 requiring rent to be paid on space left vacant "at the end of" and "beyond" the Lease Term, and substituted the word "during" for these phrases. Thus, PRC argues, as originally worded, Section 29 imposed on the tenant the obligation to continue to pay rent if the tenant decided to vacate *at the end of* the contracted-for term or renewal period. However, Amendment Number One effected a material change, so that the Section 29 provisions would apply only if occupancy ended *during* the period.

Thus, PRC continues, the *time during which* rent must be paid during vacation of the premises can be shortened by the tenant's decision not to exercise its Renewal Options under the lease. The reference in amended Section 29 to the tenant's obligation to pay "rent due under Section 31 below *as if* Tenant had exercised its Renewal Options" does not specify the duration of the rent obligation, but a *method of calculation.* PRC contends that this language points to Section 31 as providing the formula by which to calculate the rent due in the event the premises are vacated during a renewal period commenced by the tenant's actual exercise of a Renewal Option.

Despite these explanations offered by both sides, we do not believe that either interpretation establishes a plain meaning of the disputed provisions. PRC's interpretation fails to explain adequately the inclusion of subsection 29(d) in the lease. Although the subsection may be viewed as a 14-year limitation on the Section 29 requirement that rent must be paid during vacation, which would come into play only if a second five-year renewal were exercised, such a limitation appears to contradict other provisions of Section 29, requiring rent to be paid for space left vacant "during . . . the Renewal Term." In addition, it does not appear feasible in practice to read the reference to Section 31 solely as a "method of calculation," devoid of any temporal content. Rent cannot be calculated under Section 31 without reference to crucial benchmarks involving external criteria that cannot be known until the precise time for calculation has arrived. These benchmarks include "the total rent payable by Tenant to Landlord for the last year of the original term or initial renewal term," and "the most recently published monthly CPI preceding the first day of the lease year of the renewal term for which such adjustment is to be made."*

* PRC points out that not all methods of assessing rent under the lease are impossible to calculate for future years. Section 16(c) provides that, in the event the lease is terminated by the tenant's default, which includes the tenant's vacation or abandonment of the premises, the landlord may recover a lump sum payment for loss of future rent. The lump sum is calculated by using the amount of the last full year's rent as a constant.

However, Section 16(c) is not helpful in clarifying the meaning of Section 29. Nothing in Section 29 requires the landlord to utilize the provisions of Section 16(c) in establishing the amount of rent due if the tenant should vacate the premises. Instead, Section 29 specifies that the tenant must pay "*all* rent including Basic Rent and Additional Rent" in the event of vacation. The amount of such rent is not constant but varies on an annual basis.

Likewise, Cascades North's explanation does not establish a plain and unambiguous meaning of Section 29. Although Cascades North maintains that the parties intended to create an obligation of 14 years' duration, Cascades North has not explained how the language employed plainly creates such an obligation in light of the fact that the parties did not provide, straightforwardly, for a 14-year lease. Cascade North's explanation also fails to show how the language employed expresses the parties' intent to bind each other unconditionally for a period of 14 years, when in fact they phrased their agreement in terms of a seven-year lease which the tenant would have "the *option* to renew . . . for one or two additional terms of five years each."

In sum, neither party has offered a construction of these provisions that could be deemed so clear that it unambiguously excludes the explanation offered by the opponent. Because the meaning of the disputed lease provisions is unclear, the intention of the parties is a material issue in dispute, so that summary judgment was improper. Therefore, we conclude that this action must be remanded for the trial court to receive evidence relevant to the construction of the ambiguous lease provisions.

Although, in light of our conclusion, we need not consider Cascades North's remaining assignments of error, we address one point raised by PRC. In defending the ruling below, PRC has argued that Cascades North is precluded from asserting that the lease provisions contain any ambiguity, because it earlier asserted that those provisions were unambiguous. Thus, PRC contends that Cascades North has attempted to assume inconsistent, mutually contradictory positions during the course of litigation. *See Berry*, 225 Va. at 207, 300 S.E.2d at 795; *Burch v. Grace St. Bldg. Corp.*, 168 Va. 329, 340, 191 S.E. 672, 677 (1937). We disagree with this contention.

Initially, Cascades North argued that the lease provisions were unambiguous and entitled it to summary judgment. The trial court overruled Cascades North's motion for summary judgment and indicated that it would dismiss the motion for judgment pursuant to PRC's demurrer. Cascades North then filed a motion for reconsideration, raising an alternative argument that the lease provisions were ambiguous and asking the trial court to allow Cascades North to amend the motion for judgment to state its allegations of the parties' intent. Without specifically addressing the mo-

tion, the trial court permitted Cascades North to file an amended pleading, and PRC did not object to this ruling.

Cascades North's amended motion for judgment contained an extensive recital of the circumstances leading to execution of the lease, and included affidavits attempting to explain the intention of the parties in providing as they did in the lease. Thus, the amended motion for judgment clearly put PRC on notice that Cascades North was asserting that the lease provisions were ambiguous and that parol evidence was needed to aid in their construction.

■ The principle of estoppel on which PRC relies is not applicable in this context. Cascades North has not asserted the existence of a set of facts contradicting the facts previously alleged to be true, as in *Burch*, nor has it suddenly changed the position taken in its pleadings, to its opponent's prejudice, as in *Berry*.

For the foregoing reasons, we will reverse the trial court's judgment and remand this case for further proceedings consistent with the principles expressed in this opinion.

*Reversed and remanded.*