Present:  All the Justices

ADIN K. WOODWARD, ET AL.

OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 952041                          September 13, 1996

HENRY C. MORGAN, JR., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
William G. Plummer, Judge Designate

In this suit brought to enforce a restrictive covenant in a deed and to enjoin construction of a residence, the dispositive question on appeal involves the interpretation of the covenant.

In 1935, the original plat of "Ubermeer Annex No. 1," a residential subdivision located in the present City of Virginia Beach, was recorded.  As originally platted, the subdivision consisted of 13 sites, labelled "A" through "M."  Initially, the 13 sites were conveyed as twelve lots and sold to 11 landowners.

In 1982, appellees Henry C. Morgan, Jr., and Marnie J. Morgan, his wife, defendants below, purchased Lot K and the existing residence, known as 420 52nd Street.  This lot, as well as the others in the subdivision, had been originally conveyed by the Masury Corporation subject to nine restrictive covenants. After the initial sales, the subsequent deeds contained the usual language making the conveyances subject to all the unexpired conditions, restrictions, easements, and reservations of record affecting the property.

The restriction at issue in this dispute is No. 5, which provides:  "That not more than one residence exclusive of outbuildings shall be erected upon one lot."

In 1989, the defendants resubdivided Lot K, creating two

lots designated "K-1" and "K-2." Lot K-1, upon which the residence is situated, encompasses approximately 0.45 acre. Lot K-2 contains approximately 0.116 acre and is currently vacant. The defendants propose to construct a residence upon Lot K-2; this spawned the present lawsuit.

In January 1995, appellants Adin K. Woodward, Lucille Woodward, Everett W. Foote, Laura Foote, Charlotte Y. Dashiell, Richard L. Walthall, and Juliette Walthall, plaintiffs below, filed a bill of complaint against the defendants. The plaintiffs, owners of property in the subdivision, contended that the language of the Ubermeer Annex No. 1 deeds is clear and unambiguous: a lot was conveyed, and only one residence was to be constructed upon it even though the original lot was resubdivided. Asserting they are parties intended to be benefitted by the deed restriction, the plaintiffs asked the court to rule that the restriction will be violated by the construction of a dwelling on Lot K-2 and asked the court to enjoin the construction.

Responding to the bill of complaint, the defendants contended that the word "lot" has no relation to the originally platted sites or to the originally conveyed lots, and therefore the restriction permits construction of as many residences as there are legally created lots in the subdivision.

Following a June 1995 ore tenus hearing, at which the chancellor considered testimonial and documentary evidence, the

court ruled in favor of the defendants.  In an oral opinion, the chancellor stated, and counsel for the parties agreed, that the "dispositive" question involved interpretation of covenant No. 5.

The court found the covenants to present "an ambiguous situation" and, examining the intention of the original grantor, rejected the plaintiffs' contention that the word "lot" meant a lot as originally conveyed.  Rather, the court decided that the word means a parcel that may at any time become a lot.

Consequently, the court ruled in the August 1995 final decree dismissing the bill of complaint, from which the plaintiffs appeal, that "erection of the proposed single family residence on K-2 does not violate any of the restrictive covenants."

Parenthetically, we note that the trial court, both during the oral opinion and in the final decree, ruminated upon certain "additional" findings of fact without making any conclusions of law, dealing with what the defendants describe as "waiver and acquiescence."  As the defendants properly note on brief, however, those findings "do not affect the court's ruling" because counsel for "both sides agreed" that the court's decision regarding ambiguity was "dispositive of the issues."  Thus, we shall not address further the chancellor's "additional" findings but shall focus upon interpretation of the restriction.

Virginia law on the subject of restrictive covenants in deeds is settled.  Valid covenants restricting the free use of

land, although widely used, are not favored and must be strictly construed.  The burden is upon the party seeking to enforce deed restrictions to demonstrate that the covenants are applicable to the acts of which complaint is made.  Substantial doubt or ambiguity is to be resolved against the restrictions and in favor of the free use of property.  Friedberg v. Riverpoint Bldg. Comm., 218 Va. 659, 665, 239 S.E.2d 106, 110 (1977).

"Nevertheless, equity will enforce restrictions when they are reasonable and the intention of the parties is clear."  Marks v. Wingfield, 229 Va. 573, 577, 331 S.E.2d 463, 465 (1985).

In Renn v. Whitehurst, 181 Va. 360, 25 S.E.2d 276 (1943), this Court considered the intention of the same grantor (Masury Corporation) regarding an identical restriction ("That not more than one residence exclusive of outbuildings shall be allowed upon one lot") in the deeds of a subdivision ("Ubermeer") adjacent to the subdivision that is the subject of the present dispute.  This Court declared the restrictions "valid and enforceable," id. at 365, 25 S.E.2d at 278, and determined they formed part of a general plan for disposing of lots "as highly restricted residential property."  Id. at 362, 25 S.E.2d at 277.

Like this Court's prior ruling in Renn based on the evidence in that case, we hold, based on the evidence in the present case, that this restriction is valid and enforceable, forming part of a general plan to keep density low, preserve an area of large residential lots, and maintain property values.  From a reading

- 4 -

of restriction No. 5, together with the other restrictions, we believe that the original grantor and its immediate grantees, in plain and unambiguous language, intended the term "lot" to mean a lot as originally conveyed.

Each of the source deeds for Ubermeer Annex No. 1 is part of the appellate record. When applied to the subdivision as a whole, the term "lot" clearly means the sites as originally conveyed. For example, the grantees of sites D and K, the first sites conveyed, each received a "lot," identified as a particular "lot" as designated by a letter on a plat. Likewise, the grantees of sites C, E, F, J, L, and M each received a "lot," identified as a particular "site" as designated by a letter on a plat. The single grantee of sites A and B received two "lots," identified as two individual sites. Thus, eight grantees received one "lot" each while another grantee received a pair of "lots." Each conveyance was subject to the restriction, and the term "lot" in each means the sites as originally conveyed.

The defendants, urging affirmance of the judgment below, point to the evidence showing that sites G, H, and I were originally conveyed differently than the other sites. The record shows that these three lots were sold as a site and one-half to two different purchasers. Site I and the western one-half of site H were sold originally to one purchaser and called one "lot." Site G and the eastern one-half of site H were sold originally to another buyer and called one "lot." One residence

was placed later on each of the two lots.

The defendants argue that this constituted the placing of more than one residence per lot because a portion of the structures on "new" Lot G with one-half of site H, and on "new" Lot I with one-half of site H, amounted to placing parts of two residences on original site H.  Thus, defendants contend, the argument that the grantor, in creating the subdivision, wanted to limit the purchaser's right to build only one residence on the original lots "ignores the grantor's resubdivision and ignores the reality of what actually occurred -- the subsequent erection of two different residences on Lot H."  We reject this contention.

In the first place, there is no evidence that representatives of the grantor corporation knew where any future structures would be located on the properties.  In the second place, and more important, each grantee obtained a "lot," described as one and one-half sites.  The manner of these conveyances, providing for less density and less construction, was consistent with the overall plan for a highly restricted residential subdivision.

Finally, one other contention made by the defendants merits discussion.  They say that "further confusion" is added to the restrictions when No. 7 is considered.  It provides:  "That all residences erected upon said property shall be at least fifteen feet from the line [sic] and at least three feet from the side

line of each lot."  "Obviously," argue the defendants, "restriction 7 contemplates more than one residence on the property conveyed."

We disagree.  Manifestly, as the plaintiffs contend, restriction No. 7 addresses the construction of successive, not coexisting, structures.

Consequently, we will reverse the final decree in this suit because it is plainly wrong and contrary to law.  We will enter final judgment declaring that construction of a residence on Lot K-2 will violate the applicable restrictive covenants for Ubermeer Annex No. 1.  Additionally, we will remand the cause to the trial court for entry, if necessary, of an appropriate injunction to enforce our judgment.

<u>Reversed, final judgment, and remanded.</u>

JUSTICE KEENAN, with whom JUSTICE KOONTZ joins, dissenting.

I agree with the trial court that this restrictive covenant is ambiguous.  As the majority has stated, any substantial doubt or ambiguity must be resolved against the restriction and in favor of the free use of the property.  <u>Friedberg v. Riverpoint Bldg. Comm.</u>, 218 Va. 659, 665, 239 S.E.2d 106, 110 (1977).  Moreover, because restrictive covenants are disfavored, they will not be aided or extended by implication.  <u>Stevenson v. Spivey</u>, 132 Va. 115, 119, 110 S.E. 367, 368 (1922); <u>see</u> <u>Mid-State Equipment Company, Inc. v. Bell</u>, 217 Va. 133, 140, 225 S.E.2d

877, 884 (1976).

The majority assumes that "lot" in the restrictive covenant has the same meaning as "lot" in the property description. There is no basis for such an assumption. As used in the restrictive covenant, "lot" can be interpreted with equal force as meaning "any lot in Ubermeer Annex No. 1," or as meaning "any lot appearing on the original plat for Ubermeer Annex No. 1." If the grantor had intended in the restrictive covenant that "lot" mean "any lot appearing on the original plat," the grantor could have imparted that meaning by using the same term it used elsewhere in the restrictive covenants, "upon the property hereby conveyed."

I also believe that the majority's reliance on Renn v. Whitehurst, 181 Va. 360, 25 S.E.2d 276 (1943), is misplaced. Renn is inapposite to the issue before us, because its holding was based on a property owner's attempt to enlarge her house and convert it into "duplex" housing on one lot. Id. at 365, 25 S.E.2d at 278. In contrast, the Morgans are seeking to build only one dwelling on Lot K-2. Accordingly, I would affirm the trial court's judgment.