**PROVIDENCE SQUARE ASSOCIATES, L.L.C., Plaintiff,**

v.

**BONEY WILSON & SONS, INC. and Hannaford Brothers, Co., Defendants and Cross–Claim Defendants,**

**G.D.F., Inc., t/a Rite Aid, Defendant, Counter–Claimant and Cross–Claimant.**

**Civil Action No. 2:98cv743.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 26, 1999.

 

Gregory Albert Giordano, Shuttleworth, Ruloff & Giordano, Virginia Beach, VA, for Providence Square Associates, L.L.C.

Michael Scott Hart, Christian Lee Connell, Mays & Valentine, Virginia Beach, VA, for Boney Wilson & Sons, Inc., Hannaford Bros., Co.

James Edward Moore, Christian & Barton, LLP, Richmond, VA, for G.D.F., Inc.

### *OPINION AND ORDER*

DOUMAR, District Judge.

Presently before the Court is the Motion for Summary Judgment filed by Boney Wilson & Sons, Inc., and Hannaford Bros., Co. (collectively, "Hannaford") and the Motion for Partial Summary Judgment filed by

G.D.F., Inc. ("Rite Aid"). For the reasons stated below, Hannaford's Motion for Summary Judgment will be **GRANTED,** and Rite Aid's Motion for Partial Summary Judgment will be **DENIED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Providence Square Associates, L.L.C. ("Providence Square"), owns and manages a shopping center in Virginia Beach. Defendants, Rite Aid and Hannaford, are tenants in that shopping center. The relationship between Providence Square and Rite Aid is governed by a lease executed in August 1977 by Providence Square and Drug Fair.[1] Drug Fair assigned its rights to Rite Aid. The Rite Aid lease contains a restrictive covenant that provides:

> The lessor covenants that, while this lease or any extension or renewal thereof, is in force and effect, it will not lease for or permit the conducting of any other drug store, variety store or photo finishing business or any stores whose primary business is the sale of patent medicines, health and beauty aids, cosmetics, lawn and garden and/or outdoor living merchandise (this does not exclude a Home Center/Hardware type of operation) in the shopping center or building or site of which the leased premises are a part, nor upon any real estates within a radius of one mile from said shopping center . . .

(Rite Aid lease ¶ 24(a)). However, the lease continues that "the above shall not apply to any listed items sold by the National Food Chain located in the shopping center, their assigns or sub-lessees or any tenant of that space occupied or formerly occupied by the National Food Chain Store." (Rite Aid lease ¶ 24(b)).

Additionally, Rite Aid's lease provides that if the restrictive covenant is breached, Rite Aid is entitled to:

> pay as revised rent for said premises a sum equivalent to one and three-fourths percent (1–3/4%) of gross sales with a guaranteed minimum rental of Twenty–Five Thousand Dollars ($25,000.00) annual-

ly. Said minimum revised rental shall be paid in monthly installments of Two Thousand Eighty–Three and $^{33}/_{100}$ Dollars ($2,083.33) in advance of the first day of each month during the balance of the term hereof.

(Rite Aid lease ¶ 24(b)).

At the time of the original lease between Rite Aid's and Providence Square's predecessors, Safeway was the National Food Chain located in Providence Square shopping center. Safeway has since closed. Hannaford decided to open a grocery store in the space previously occupied by Safeway and entered into a lease with Providence Square. In that store, Hannaford is operating a pharmacy and photo drop box. Providence Square asked Hannaford to delay operating the pharmacy until the lease could be interpreted by a court. Hannaford refused. Presently, the sale of prescription drugs generates 2.33% of the total revenues at this location.

Consequently, Providence Square brought this action in Virginia state court seeking a declaratory judgment clarifying the rights and obligations of the parties under the leases. Plaintiff also alleges that Defendants breached contracts: Hannaford is operating a pharmacy and Rite Aid is withholding rent. Plaintiff amended the complaint to include allegations that Hannaford is operating a photo drop box in violation of the lease and that Hannaford has breached the restrictive covenant contained in Rite Aid's lease.

Defendants removed this action to this Court. Following removal, Rite Aid filed a counterclaim against Providence Square alleging that Providence Square allowed Hannaford to operate a pharmacy and photo drop box in violation of the lease. Rite Aid also brought a cross-claim against Hannaford alleging that Hannaford breached its lease with Providence Square, violated the restrictive covenant contained in Rite–Aid's lease and tortiously induced Providence Square to breach its lease with Rite Aid.

## II. LEGAL ANALYSIS

### A. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be

---

1. Drug Fair was a chain of drug stores operating in several states.

granted where "the pleadings, depositions [and] answers to interrogatories ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has construed Rule 56(c) to "mandate the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court explained that, "[i]n such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552. *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The non-moving party must demonstrate that there are specific facts which create a genuine issue for trial. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. "Where ... the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *United States v. Lee,* 943 F.2d 366, 368 (4th Cir.1991).

## B. Hannaford's Motion for Summary Judgment

Hannaford takes two positions in arguing that it is not subject to the restrictive covenant found in the Rite Aid lease. First, Hannaford maintains that it is a "grocery store," not a "drug store" or "photo-finishing business;" thus, Hannaford's operation would not be subject to the terms of the restrictive covenant. Alternatively, Hannaford contends that the exception to the restrictive covenant should apply to the store since it is located in the space where Safeway was located. The Court concludes, after considering the briefs submitted by the parties and oral argument, that Hannaford is not operating either a drug store or a photo-finishing business. Therefore, Hannaford is not

breaching the restrictive covenant found in Rite Aid's lease.

### 1. *Interpretation of the Restrictive Covenant*

A lease is treated as any other contract when the Court is interpreting its provisions. *Chawla v. BurgerBusters, Inc.,* 255 Va. 616, 620, 499 S.E.2d 829, 831 (1998); *Cascades N. Venture Ltd. Partnership v. P.R.C., Inc.,* 249 Va. 574, 579, 457 S.E.2d 370, 373 (1995). Under Virginia law, the Court should attempt to ascertain and give effect to the intention of the parties as expressed in the contract. *Langley v. Johnson,* 27 Va. App. 365, 368, 499 S.E.2d 15, 16 (1998) (quoting *Bender–Miller Co. v. Thomwood Farms, Inc.,* 211 Va. 585, 588, 179 S.E.2d 636, 639 (1971)). The Court must presume that the parties intentionally selected the words found in the contract and did not use words aimlessly. *Winn v. Aleda Const. Co.,* 227 Va. 304, 307, 315 S.E.2d 193, 194 (1984). If the terms of the contract are clear and unambiguous, then they must be given their plain and ordinary meaning. *Langley,* 27 Va.App. at 368, 499 S.E.2d at 16; *Foods First, Inc. v. Gables Assocs.,* 244 Va. 180, 182, 418 S.E.2d 888, 889 (1992). However, if the terms are susceptible to more than one meaning, then the terms are ambiguous and the Court may consider extrinsic evidence when interpreting the contract. *Bergman v. Bergman,* 25 Va. App. 204, 211, 487 S.E.2d 264, 267 (1997); *Cascades N. Venture Ltd. Partnership,* 249 Va. at 579, 457 S.E.2d at 373.

Moreover, covenants that "restrict the free use of land are not favored and must be strictly construed." *Sloan v. Johnson,* 254 Va. 271, 491 S.E.2d 725, 727 (Va.1997). *See also Woodward v. Morgan,* 252 Va. 135, 138, 475 S.E.2d 808, 810 (1996); *Foods First, Inc.,* 244 Va. at 182–83, 418 S.E.2d at 889–90; *Marriott Corp. v. Combined Properties Ltd. Partnership,* 239 Va. 506, 514, 391 S.E.2d 313, 317 (1990). Any doubts regarding the covenant must be resolved in favor of free use. *Woodward,* 252 Va. at 138, 475 S.E.2d at 810. Moreover, the party seeking to enforce the restriction has the burden of proof regarding the covenant. *Sloan,* 491 S.E.2d

at 727; *Foods First,* 244 Va. at 182, 418 S.E.2d at 889.

The restrictive covenant in this case prohibits "the conducting of any other drug store, variety store or photo finishing business or any stores whose primary business is the sale of patent medicines, health and beauty aids, cosmetics, lawn and garden and/or outdoor living merchandise . . ." (Rite Aid lease ¶ 24(a)). The provision purports to restrict the operation of four distinct types of businesses: drug stores, variety stores, photo finishing businesses, and stores that primarily sell the listed items.

### 2. *Hannaford is not a photo-finishing business*

Hannaford argues that the presence of a photo drop box in its grocery store, with the film finishing done off-site, does not convert the nature of its operation to that of "a photo-finishing business." Rite Aid argues that its maintenance of a nearly identical photo drop box to the one found in Hannaford's store demonstrates that the term "photo-finishing business," as used in the lease, describes a photo drop box.

█ The Court agrees with Hannaford that the existence of a photo drop box should not be considered a "photo-finishing business" for purposes of this lease. Hannaford is not responsible for the finishing of the film; the film placed in the drop box is sent to another location for finishing. The mere presence of a drop box does not alter the fact that Hannaford is a grocery store. Similarly, the presence of an automatic teller machine (commonly known as an "ATM machine") in a convenience store does not convert the convenience store into a bank; nor does a mailbox in the federal courthouse indicate that the federal courts are in the business of handling mail.

The fact that Rite Aid operates a similar drop box does not demonstrate that a photo

drop box is what the parties intended when they chose the words "photo-finishing business." There is no definition of "photo-finishing business" in the lease, nor did the parties utilize specific language such as "a photo-finishing business, similar to the one currently operated by Drug Fair"[2] or "a photo drop box." The Court must presume that the parties chose the words of the covenant carefully. *See Winn,* 227 Va. at 307, 315 S.E.2d at 194. The absence of a descriptive clause forces the Court to give the phrase "a photo-finishing business" its plain and ordinary meaning. There can be no doubt that the plain and ordinary meaning of those words is a business that finishes photos.[3] Hannaford does not finish photos; it merely serves as a conduit between the customer and the photo-finishing lab. Accordingly, Hannaford's operation of a photo drop box does not violate the terms of Rite Aid's lease.

### 3. *Hannaford is not a drug store*

Hannaford maintains that the operation of a pharmacy within a grocery store does not change the nature of the store to such an extent that its store should be called a drug store. In support of this contention, Hannaford provides evidence that the sale of prescription drugs generates a small percentage of the overall revenue of the store. Rite Aid responds that Hannaford is a grocery store operating a drug store. Rite Aid argues that the purpose of paragraph 24(a) was to prevent competition with Rite Aid and Hannaford is violating that provision.

█ The restrictive covenant prohibits the operation of "any other drug store." The issue is what constitutes a drug store. Rite Aid argues that the essence of a drug store is the sale of prescription medicines. However, that definition is not supported by the language of the lease. The lease does not restrict the mere sale of prescription medi-

---

**2.** *See* footnote 1.

**3.** The lease between Plaintiff and the store "Just Photos" supports this interpretation of the phrase. The lease between Plaintiff and Just Photos provides: "Permitted Use: the retail sale of digital imaging, graphic design, laminating, color copies, fax, ups, portrait studio, frames,

albums, printing (no photo finishing business will be permitted on the premises)." (Just Photos lease § A(1)(m)). The phrase, "on the premises," indicates that photo-finishing conducted off-site would be permissible. That is exactly what is being done by Hannaford.

cines. The absence of that restriction is significant, in light of the canon of construction, *expressio unius est exclusion alterius,* or the "expression of one thing is the exclusion of another," that helps guide in this analysis. *Virginia Soc'y for Human Life, Inc., v. Caldwell,* 500 S.E.2d 814, 818 (Va. 1998). When that maxim is applied to the restrictive covenant in this case, it is clear that the covenant does not prohibit the operation of a store that primarily sells prescription drugs. This is demonstrated by the fact that the lease recites several items that cannot be the primary merchandise of a store in the shopping center: patent medicines, health and beauty aids, cosmetics, lawn and garden and outdoor living merchandise. The parties to the lease could have included the sale of prescription medicines in that list.[4] They did not. Thus, they were interested in restricting "drug stores," not stores that sold prescription medicines as an incidental.

To define the phrase, "a drug store," the Court first must consider the language of the contract itself. *Langley,* 27 Va.App. at 368, 499 S.E.2d at 16. The parties did not define the phrase, a drug store, in the contract. The fact that the restrictive covenant prohibits the operation of "any other drug store" provides the Court some insight. The inclusion of the words, "any other," presupposes that Drug Fair was a drug store at the time the lease was signed. Indeed, paragraph 12(a) of the lease states that the Drug Fair will use the premises for "the conduct and operation of a retail drug store, including, at Lessee's option, the operation of a soda fountain and lunch counter and the off-premise sale of alcoholic beverages, similar to that now being operated by Drug Fair Stores in Metropolitan Washington ..."[5] However, the operation of a lunch counter does not

make the drug store a "restaurant;" nor does the operation of a soda fountain make it an "ice cream parlor;" nor does the sale of alcoholic beverages make it a "liquor store." The sale of health and beauty aids does not make it a beauty shop. The sale of lawn and garden items does not make it a nursery shop. These items are incidental and adjunct to the operation of a drug store.

The next step in the analysis is to consider the legal circumstances at the time the lease was signed. This lease was executed in August 1977, when the Virginia Blue Laws (Sunday closure laws) were in full force. The categorization of businesses was important during this time because there were exemptions from the Blue Laws for certain defined business. In fact, "a drug store" was one type of business that was exempt from the closure dictate of the Blue Laws. Va. Code Ann. § 18.2–341(17) (Michie 1975).[6] The statute defines a drug store as a store where "a majority of the sales receipts of which consist of prescription and nonprescription drugs, health and beauty aids." *Id.* Hannaford is not a store where the majority of the sales receipts come from the sale of prescription and nonprescription drugs and health and beauty aids. *See generally* Cindy Schlaepfer Aff. and Exs. In fact, only 2.33% of Hannaford's total sales come from the sale of prescription drugs. *Id.* Consequently, Hannaford would not be considered a drug store under the only definition of a "drug store" in Virginia statutory law. This same law exempted a business engaged in the sale of food, commonly known as a "food dealer." Va.Code Ann. § 18.2–341(15) (Michie 1975).

Moreover, the reality at the time the lease was signed was that food dealers were selling a wide variety of products. This is demon-

---

4. Indeed, restrictive covenants found in other leases contained such words. In *J.C. Penney Co. v. Giant Eagle, Inc.,* 813 F.Supp. 360 (W.D.Pa. 1992), *aff'd,* 995 F.2d 217 (3rd Cir.1993), the lease prohibited the use of the space as "a drug store, or for the filling or selling of prescriptions." Similarly, in *Gillen–Crow Pharmacies, Inc. v. Mandzak,* 8 Ohio Misc. 47, 220 N.E.2d 852 (OhioC.P.1964), *aff'd,* 5 Ohio St.2d 201, 215 N.E.2d 377 (Ohio 1966), the lease prohibited "any other business which sells drugs or prescriptions."

5. *See* footnote 1.

6. The Ohio Court of Appeals also turned to state law to determine the definition of a "drug store" for purposes of a restrictive covenant in *Rite Aid v. Marc's Variety Store, Inc.,* 93 Ohio App.3d 407, 638 N.E.2d 1056, 1060 (1994). Ohio statutes defined a "drug store," as one under the management or control of a legally registered pharmacist. *Id.* In that case, since the defendant did not sell prescription drugs was not operating in violation of the lease. *Id.*

strated in *Bonnie Belo Enters., Inc. v. Commonwealth*, 217 Va. 84, 225 S.E.2d 395 (1976), a case applying the Virginia Blue Laws. In that case, the Virginia Supreme Court found that Farm Fresh,[7] a grocery store, "whose principal business is the 'sale of food', is permitted, incidental to the operation of his business on Sunday, to sell such non-food items as are sold in the ordinary and normal course of his business." *Id.* at 87, 225 S.E.2d at 398. Additionally, the lease demonstrates that the parties contemplated the fact that the National Food Chain would sell non-food products. Paragraph 24(b) of the Rite Aid lease provides for an exemption to the restrictive covenant for the National Food Chain and states, "the above shall not apply to any listed item sold by the National Food Chain . . ." The listed items are found in paragraph 24(a) and include such non-food items as patent medicines, health and beauty aids, cosmetics, and lawn and garden items. The parties could have included prescription medicines in this list, but they chose not to.

Rite Aid attempts to rely upon *Krikorian v. Dailey*, 171 Va. 16, 197 S.E. 442 (1938), for the proposition that the Court must look at the actual items sold in the store to determine whether a restrictive covenant has been breached. However, that was not the holding of the Virginia Supreme Court in *Krikorian*. The procedural posture of this case is important to properly understand its holding. The case was being appealed to determine if there was sufficient evidence to support the jury's verdict and if certain instructions given by the trial court were proper. In *Krikorian*, a jury concluded that a drug store which sold confectionaries violated a lease provision prohibiting the lessor from leasing the property "for a confectionary." *Id.* at 27, 197 S.E. at 447. The jury reached this conclusion after it was instructed to determine wether the drug store was "a substantially similar business" to the confectionary. *Id.* at 28, 197 S.E.2d at 447. Thus, those businesses were "*substantially similar.*" That is not the evidence in this case. The Virginia Supreme Court upheld both the jury instruc-

tion and the jury verdict in *Krikorian.* *Id.* at 34, 197 S.E. at 450.

Applying the standard found in the jury instruction in *Krikorian* to this case, the Court cannot conclude that Hannaford is "a substantially similar business" to Rite Aid. Indeed, it is uncontested that Hannaford principally sells food products; whereas Rite Aid sells a variety of products, but principally prescription medications. The fact that they both may sell prescription medications does not make them both drug stores. There are many products that are sold in a variety of stores. For example, candy bars often are sold in grocery stores, drug stores, discount stores, convenience stores and movie theaters. The fact that all of those businesses sell candy bars, does not make them "substantially similar," nor "candy stores." They target different audiences, focus on the sale of certain items and serve different functions for the consumer. As we have seen, the prohibition in the lease was against operating a "drug store." It did not specify prescription medicines.

Finally, the Court's decision is consistent with other jurisdictions that have interpreted similar restrictive covenants. *See Cheng v. Brewran Village Hudson Assocs.*, 180 A.D.2d 519, 580 N.Y.S.2d 740, 741 (1992) (finding that the sale of greeting cards and stationery by a discount store did not violate a lease prohibiting "a greeting card or stationery store," because the sales were incidental, as interpreted under state law); *Winter Park Appliance Ctr., Inc. v. Walling Crate Co.*, 196 So.2d 198, 199 (Fla.Dist.Ct.App.1967) (finding that the incidental sale of appliances related to the particular business of various stores did not violate a lease providing that the plaintiff would be the "only appliance store"); *Wilson v. Golman*, 563 S.W.2d 655 (Tex.Civ. App.1978) (holding that the prohibition on the operation of a "liquor store" did not include the sale of beer and wine by a convenience store because the term, liquor store, contemplated the sale of distilled liquors in packages); *Norwood Shopping Ctr., Inc. v. MKR Corp.*, 135 So.2d 448, 450 (Fla.Dist.Ct.

7. Currently there are both Farm Fresh and Be-Lo grocery stores, which are separate and distinct operations.

App.1961) (finding that the operation of a bakery within a supermarket did not violate a lease prohibiting the operation of a store whose principal business is a bakery, delicatessen or appetizers).

### 4. *Tortious Interference with Contract*

Hannaford previously moved to dismiss this claim raised by Rite Aid in its cross-claim. However, that motion was denied. Now Hannaford maintains that Rite Aid has failed to demonstrate that there was any intentional interference with contract.

In order to establish a valid claim for tortious interference with contract, Rite Aid must prove that: (1) a valid contract exists or existed; (2) the interferor knew of the contract; (3) the interferor intentionally interfered causing a breach of the contract; and (4) the party who has been disrupted suffered damage. *See Duggin v. Adams,* 234 Va. 221, 226, 360 S.E.2d 832, 835 (1987) (quoting *Chaves v. Johnson,* 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985)). Since Hannaford has not violated the restrictive covenant, it is not necessary to determine whether all the elements have been shown. Accordingly, summary judgment in favor of Hannaford on this claim is appropriate.

### C. **Rite Aid's Motion for Partial Summary Judgment**

Rite Aid seeks summary judgment on its counterclaim against Plaintiff, Providence Square, in which it contends that Providence Square breached the lease by not complying with the restrictions in the lease and allowing the operation of a pharmacy and photo drop box. Plaintiff objected to this motion as untimely and filed its response on January 19, 1999. In its response, Plaintiff argues that it acted in a timely fashion to determine whether there had been any violation of the lease. In light of the above conclusion that Hannaford's operation of its pharmacy and photo drop box do not violate the restrictive covenant found in Rite Aid's lease, partial summary judgment on Rite Aid's counterclaim against Providence Square must be denied. By the Court's own motion, the counterclaim must be dismissed. *See* Fed. R.Civ.P. 54(b).

Furthermore, Rite Aid seeks summary judgment on its cross-claim against Hannaford. In its cross-claim, Rite Aid argues that a restrictive covenant in a lease is enforceable against another tenant that breaches that covenant, if that party had notice of the covenant. Again, since Hannaford has not violated the restrictive covenant, there is no basis for the cross-claim. Consequently, Rite Aid's motion for partial summary judgment on the cross-claim must be denied and the cross-claim should be dismissed. It is unnecessary to determine whether an injunction would lie where the lease provides a monetary remedy.

### III. CONCLUSION

For the reasons stated above, it is the decision of the Court to **GRANT** Hannaford's Motion for Summary Judgment. Additionally, the Court **DENIES** Rite Aid's Motion for Summary Judgment and **DISMISSES** both the Counterclaim and the Cross-Claim. The only remaining claim in this matter is Plaintiff's claim against Rite Aid for breach of contract, which would merely be a determination of the amounts withheld. Thus, the Court declares that the lease does not prevent a "grocery store" from selling prescription drugs or maintaining a photo drop box incidental to its grocery business. Nor is there any evidence that Hannaford, up to this time, is a "drug store" or a "photo finishing business."

The Clerk of the Court is **DIRECTED** to forward copies of this Order to all counsel of record.

**IT IS SO ORDERED.**