# CIRCUIT COURT OF AUGUSTA COUNTY

Gregory S. Alford et al.

v.

Randall Vandevander et al.

## April 30, 1999

BY JUDGE THOMAS H. WOOD

The issue now pending before me for resolution is whether the defendants should be permanently enjoined from placing a manufactured home on a lot in a subdivision north of the City of Waynesboro in Augusta County, Virginia.

By a deed dated December 18, 1998, and recorded in the Clerk's Office of the Circuit Court of Augusta County in Deed Book 1399 at page 360, Randall Vandevander and Tonia Vandevander, husband and wife, hereinafter defendants, purchased Lot 5-B in a small subdivision in Wayne District of Augusta County, Virginia. The lot contains 4.28 acres and is designated as Lot 5-B on the subdivision plat. The plaintiffs, Gregory S. Alford and Jean T. Alford, husband and wife, and Kenneth R. Jones, Jr., and Barbara F. Jones, husband and wife, own Lots 5-A and 6-B in the same subdivision. There are eleven lots in this subdivision. All of the lots are subject to restrictive covenants first recorded in the Clerk's Office of the Circuit Court of Augusta County in Deed Book 931, page 60. This deed recites that:

This conveyance shall be subject to the following covenants, restrictions, and reservations:

1. This property shall be used for residential purposes only.

2. Any residence constructed on the property herein conveyed shall contain at least 1,500 square feet of fully enclosed floor space devoted to living purposes (exclusive of porches, decks, terraces, garages, or outbuildings).

3. No pigs, chickens, or goats shall be kept on the property herein conveyed.

4. No tents, campers, mobile homes, or vehicles designed for mobile living may be used for either temporary or permanent living spaces upon the property herein conveyed.

Defendants propose to install on their lot a Fleetwood Woodlawn Park which they have contracted to purchase from Vicky Terry, the owner of Vicky's Homes in Farmville, Virginia. This Fleetwood Woodlawn Park is a double wide, manufactured home. This manufactured home is inspected by the Department of Housing and Urban Development and will be delivered to the lot in two sections. Each section is 14 feet wide and 64 feet long, is built upon a permanent steel chassis and will be towed to the site by virtue of wheels and axles which are attached to the steel chassis. The chassis has a steel tongue which attaches to the tractor which is used to tow the structure to the site. The sections of the structure are issued a document by the Commonwealth Transportation Commissioner which enables the manufacturer to transport the sections on the public highways of the Commonwealth. Ms. Terry testified that this document was a "Certificate of Origin," and the Code of Virginia refers to the document as a "temporary registration or permit." The structure has slightly over 1,700 square feet of living space and is, according to the evidence, to be installed on top of "dry-stacked" piers which rest upon individual footings. The term "dry-stacked" means that the piers will be constructed of concrete block without the use of mortar between the blocks. Defendants have represented to the Court that they intend to finance the purchase of the manufactured home by a "30-year conventional real estate loan" secured from a financial institution in Roanoke, Virginia. For "loan purposes," the defendants' lot and manufactured home have been appraised at $101,570.00. The lending institution proposes to lend 95 percent of that amount to the defendants.

While defendants represent that they are going to obtain a real estate loan on this property, it is clear that they are not required to. In fact, the purchase of the manufactured home could be financed by a security agreement and the placing of a security interest on the title certificate for the manufactured home. Remarkably, by statute, a security interest perfected by having a notation of it placed upon the title certificate would retain its validity and priority even after the manufactured home has been attached to the real estate and the title certificate returned to the Department of Motor Vehicles for cancellation.

Both parties introduced evidence as to the impact this manufactured home would have upon surrounding property. In addition, defendants offered evidence which would tend to prove that manufactured homes are rarely moved once attached to the real estate, and there are any number of Code

sections which would dictate that they, manufactured homes, be treated as real estate once it is attached to the realty. Further, defendants point out that the General Assembly has prohibited localities from adopting and enforcing zoning ordinances which would prohibit the placement of manufactured homes on permanent foundations on individual lots in agricultural zoning districts. In fact, Augusta County has adopted a zoning ordinance in compliance with Va. Code § 15.2-2290.

What the defendants fail to point out and what is at the very heart of this case is that zoning ordinances cannot be used to circumvent restrictive covenants. § 15.2-2290(c). The real issue in this case, I suggest, is not whether this manufactured home will adversely affect adjoining real estate or whether manufactured homes are socially desirable because they provide an opportunity for affordable housing to individuals who otherwise would not be able to own their own home. The only issues are whether the covenants contained in the chain of title to the defendants' lot were intended to prevent the installation of a structure of this nature on one of the lots in the subdivision, and if so, whether they are enforceable.

There is no dispute among the parties as to the law of Virginia with respect to restrictive covenants in deeds. So far as is relevant to this case, the law was summarized and explained in the recent Supreme Court case of *Woodward v. Morgan*, 252 Va. 135, 475 S.E.2d 808 (1996). As explained by the Court, restrictive covenants restrict the free use of land and are, therefore, not favored and must be strictly construed. In a lawsuit brought to enforce a restrictive covenant, the burden is placed upon the party bringing the lawsuit to establish the applicability and enforceability of the covenant involved. Any substantial doubt or ambiguity is to be construed against the enforcement of the restrictive covenant and in favor of the free use of the property. However, these covenants are enforceable when the intent of the parties is clear and when the covenants are reasonable. *Id.* at p. 138. However, there is no Virginia case squarely upon the issue of whether a restrictive covenant prohibiting the installation of a mobile home on a lot in a subdivision can be employed to prohibit the installation of a manufactured home. This issue has been addressed by the Courts of other states.

In the case of *Young v. Lomax*, 470 S.E.2d 80 (N.C. App. 1996), the North Carolina Court of Appeals squarely confronted the issue confronting this Court. In the *Young* case, lot owners in a subdivision brought a suit against the defendant seeking a mandatory injunction ordering the removal of a double wide, manufactured home which had been installed on the defendant's lots. The subdivision had restrictive covenants which provided, in part, "no structure of a temporary nature, trailer, mobile home ... shall be

used on any lot at any time as a residence, either temporarily or permanently … ." The evidence further established that the structure which had been placed on the defendant's lot was a double wide, manufactured home. On these facts, the trial court granted summary judgment for the plaintiffs finding that there was no genuine issue as to any material fact in concluding that the double wide, manufactured home was a mobile home. The North Carolina Court of Appeals affirmed the decision of the trial court. The "manufactured home" involved in the *Young* case is identical to the structure involved in the case at bar. Further, the manufactured home in the *Young* case was to be installed in precisely the same manner as defendants propose to install their manufactured home, i.e., on concrete block piers. The *Young* Court pointed out that the manufactured home was delivered to the site in two sections, that each section had its own permanent steel chassis, that each unit had its own wheels and axles and that the structure was towed to the site by a truck with the structure riding on its own axles and wheels. The Court observed that removing the wheels and axles and placing the structure on concrete blocks which were stacked to create piers and thereby rendering the structure immobile does not change the fact that the structure is still a mobile home. *Id.* at p. 82.

On slightly different facts, the Court of Appeals of South Carolina reached the same result in the case of *Heape v. Broxton*, 360 S.E.2d 157 (S.C. App. 1987). In the *Heape* case, the structure was identical to the structure in the *Young* case and to the structure in the case at bar. Perhaps, as a sign of the times, it was termed a mobile home by the defendant in that case. The restrictive covenant in question provided, in part, that "no structure of a temporary character, trailer … shall be used on any lot at any time as a residence either temporarily or permanently." The South Carolina Court went to great lengths in trying to explain why it believed that a trailer and a double-wide structure which had been permanently affixed to the land were the same. This Court was, I suggest, impressed by the fact that each section has a permanent steel undercarriage which is never removed from the structure. While the wheels and axles may be removed and the structure may be placed upon stacked, concrete block piers, the structure can easily be separated again and moved again.

In the case at bar, the restrictive covenants were placed upon this subdivision in 1988. At that time, the terms "mobile home" and "manufactured home" were defined in different sections of the Virginia Code. Those definitions were, and still are, identical except that the definition of "manufactured home" contains the additional phrase "subject to federal regulation." Compare § 46.2-100 of the Code of Virginia with § 36-85.3 of the

Code of Virginia. Defendants introduced evidence at the trial of this matter tending to prove that the fact that the manufactured home has been inspected by HUD ensures its quality. That may be, but, I suggest, it has no effect whatsoever on the nature of the structure. The manufactured home is constructed on a permanent steel chassis and travels on its own wheels and axles. On site, it is installed on the top of dry-stacked piers and bolted together. Ms. Terry testified that it would take five to six men six to seven days to complete the installation of this manufactured home. There was no evidence introduced which would shed any light upon the time needed to reverse the process. However, the fact that the steel chassis remains under both sections ensures its future mobility should the need arise. The manufactured home is not subject to the State Building Code. By statute, § 46.2-653 of the Code of Virginia, the owner is required to apply within thirty days to the Division of Motor Vehicles for a title certificate in the name of the owner. If the lending institution is so inclined, a security interest can be perfected by simply noting the security interest on the certificate of title. The security interest will not be thereafter adversely affected even if the owner surrenders his title certificate to the DMV. The original purchaser, in this case the Vandevanders, will pay a sales tax when they purchase the manufactured home. Admittedly, the home will be treated as realty for many purposes once the title certificate has been surrendered. However, as pointed out above, this will have no effect on the ability of the owner to quickly, and rather easily, I suggest, remove the home from its foundation and move it elsewhere. An official of the Augusta County Building Inspection Office testified that, for inspection purposes, the manufactured home is treated the same as a mobile home. The original developer of this small subdivision testified that he intended to prohibit this type of structure.

The defendants, in this case, argue strenuously that a manufactured home is not a mobile home and that the developer could easily have prohibited manufactured homes by using that precise term in the restrictive covenants. Further, defendant suggests that at best the restrictive covenants are ambiguous as to whether a manufactured home is prohibited.

After considering the evidence, the above-cited authorities and the views of counsel, the Court is of the opinion that the restrictive covenants in this case are valid, free from ambiguity, and are enforceable so as to support an injunction permanently enjoining the defendants from installing this double wide, manufactured home on the lot in question.